UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| _____ ) | | |
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| TIMOTHY PAUL MORELLO, | ) | CASE NO. 07-21151 |
| | ) | |
| DEBTOR. | ) | |
| _____ ) | | |
| | ) | |
| CONTROL MODULE, INC., | ) | ADV. PRO. NOS. 07-02052 |
| | ) | |
| PLAINTIFF, | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY PAUL MORELLO, | ) | RE: ADV. ECF NOS. 141, 161 |
| | ) | |
| DEFENDANT. | ) | |
| _____ ) | | |

APPEARANCES:

Eric Henzy, Esq.                                    Attorney for Plaintiff
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103

Patrick W. Boatman, Esq.                           Attorney for Defendant/Debtor
Law Offices of Patrick Boatman, LLC
111 Founders Plaza
Suite 1000
East Hartford, CT 06108

**MEMORANDUM OF DECISION ON
MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT**

1

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I. INTRODUCTION

In this adversary proceeding, the Plaintiff, Control Module, Inc. (hereinafter, the "Plaintiff" or "CMI"), seeks to have declared non-dischargeable a debt owed to it by Timothy Morello (hereinafter, the "Defendant" or "Debtor"). The Plaintiff has moved for summary judgment based upon the alleged preclusive effect of a prior jury verdict rendered in the Superior Court for the State of Connecticut on March 9, 2007 and its related proceedings (hereinafter, the "Superior Court Action.").[1] Similarly, the Debtor has filed a cross-motion for summary judgment based upon his view that the jury verdict preclusively established that there is no basis to find the debt non-dischargeable. For the reasons stated below, both the Plaintiff's and Debtor's motions are DENIED.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§157(a) and (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(I).

## III. PROCEDURAL BACKGROUND

The Debtor filed a petition under chapter 7 of the United States Bankruptcy Code on

---

[1]The Debtor was a co-defendant in the Superior Court Action, Doc. No. CV-05-4015083-S (X09), with John C. Dybowski, a bankruptcy debtor in Case No. 07-21152, and Xipher Technologies, LLC., a bankruptcy debtor in Case No. 07-21154. The Plaintiff has brought an adversary proceeding objecting to the discharge of John Dybowski's debt to it arising from the same jury verdict, Adv. No. 07-07-02051, and has also filed a motion for summary judgment in that proceeding. As with the Debtor herein, Mr. Dybowski has filed a cross-motion for summary judgment.

August 20, 2007. John J. O'Neil was appointed as chapter 7 trustee. Among the debts included on the Debtor's schedules was a disputed debt owed to CMI, described as an "Adverse jury verdict" in the amount of $2,858,816.00, ECF. No. 1. The Court set November 13, 2007 as the date by which all objections to discharge had to be filed. ECF No. 5. Prior to that date, on September 19, 2007, CMI filed a three-count *Complaint To Determine Dischargeability of Debt* (hereinafter, the "Nondischargeability Complaint"), Adv. ECF No. 1.[2] In Count I, it alleged that the debt should be excepted from discharge under Bankruptcy Code §523(a)(2)(A) ("for money, property, [or] services . . . to the extent obtained, by – false pretenses, a false representation, or actual fraud"). In Count II, it alleged that the debt should be excepted from discharge under Bankruptcy Code §523(a)(4) ("for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"). In Count III, it alleged that its debt should be excepted from discharge under Bankruptcy Code §523(a)(6) ("for willful and malicious injury by the debtor to another entity or to the property of another entity").

On November 16, 2007, the Debtor filed an *Answer* denying the essentials elements of the Plaintiff's Nondischargeability Complaint and asserting three special defenses, Adv. ECF No. 18. In the First Special Defense, the Debtor alleged, *inter alia*, that his conduct which formed the basis of the Plaintiff's Nondischargeability Complaint was in accordance with the advice of counsel. In the Second Special Defense, the Debtor alleged, *inter alia*, that a *Memorandum of Decision on Punitive Damages, Attorney's Fees and Equitable Relief* entered in the Superior Court Action on September 10, 2007, Adv. ECF No. 142-9;

---

[2]The designation of "Adv. ECF No." as opposed to "ECF No." is intended to distinguish the adversary proceeding docket from that of the main bankruptcy case.

Plaintiff's Motion Ex. 7, in which the Honorable Joseph M. Shortall (hereinafter, "Judge Shortall") found that the Defendant lacked the "wilful and malicious" state of mind necessary to have punitive damages entered against him under the Connecticut Uniform Trade Secret Act (hereinafter, "CUTSA"), established a defense to the Nondischargeability Complaint. In the Third Special Defense, the Debtor alleged, *inter alia*, that the Plaintiff acted wantonly and maliciously in the months following the jury verdict in seizing the Debtor's company and assets, and therefore, should be estopped from asserting the nondischargeability of its claim against the Debtor.

Thereafter, and following the completion of discovery, on June 6, 2011, the Plaintiff filed a *Motion for Summary Judgment* (hereinafter, the "Plaintiff's Motion"),Adv. ECF No. 141.   In the Plaintiff's Motion, CMI sought summary judgment on Count II of its Nondischargeability Complaint and on the first and second of the Debtor's three special defenses.  Accompanying the Plaintiff's Motion was a *Local Rule 56(a)1 Statement in Support of Motion for Summary Judgment* and thirteen *Exhibits*, Adv. ECF No. 142.  On August 24, 2011, following the granting of several extensions, the Debtor filed in response, a *Memorandum in Opposition to Motion of Control Module, Inc. For Summary Judgment & Memorandum in Support of Motion for Summary Judgment In Favor of Timothy Paul Morello,* Adv. ECF  No. 159, an *Affidavit of Timothy Paul Morello*, Adv. ECF No. 160 and his *Local Rule 56(a)2 Statement*, Adv. ECF No. 162 (as amended by *Corrected Local Rule 56(a)2 Statement,* filed November 14, 2011, (Adv. ECF No. 180).  Also on August 24, 2011, the Debtor filed his own *Motion for Summary Judgment (*hereinafter, the "Debtor's Cross-Motion"*)*, Adv. ECF No. 161. Accompanying the Debtor's Cross-Motion was a duplicate

4

*Affidavit of Timothy Paul Morello*, Adv. ECF No.161-1, a duplicate *Memorandum in Opposition . . . & Memorandum In Support . . .*, Adv. ECF No. 161-2, and *a Local Rule 56(a)1 Statement in Support of [Debtor's] Motion for Summary Judgment*, Adv. ECF No. 161-3. On October 13, 2011, the Plaintiff responded to the Debtor's Cross-Motion by filing an *Objection to Defendant's Motion for Summary Judgment,* Adv. ECF No. 167, a *Local Rule 56(a)2 Statement In Opposition to Defendant's Motion for Summary Judgment,* accompanied by *Exhibit 1* (an excerpt of Superior Court Action trial testimony by the Defendant)*,* Adv. ECF No. 168-1, and *Plaintiff's Reply to Defendant's Response to Motion For Summary Judgment*, Adv. ECF No. 169. Finally, on November 14, 2011, the Debtor filed a *Defendant's Sur-Reply Regarding Plaintiff's Motion for Summary Judgment*, Adv. ECF No. 178. The Plaintiff's Motion and Debtor's Cross-Motion are ripe for resolution.

## IV SUMMARY JUDGMENT PROCEEDINGS

*A. Summary Judgment Standards*

Federal Rule of Civil Procedure 56(c), (hereinafter, "Fed. R. Civ. P. __") made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr. D. Conn. 2000) (internal citations omitted).

When ruling on motions for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there

is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.*  In deciding a summary judgment motion, the court, "cannot try issues of fact, but can only determine whether there are issues of fact to be tried." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984), (quoting *Empire Electronics Co. v. United States,* 311 F.2d 175, 179 (2d Cir. 1962)).

The moving party has the burden of showing that there are no material facts in dispute and all reasonable inferences are to be drawn, and all ambiguities resolved, in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed.2d 142 (1970) (superceded on other grounds); *see also*, *In re Blonder*, 246 B.R. at 150. On a motion for summary judgment, even if the moving party's assertions are accepted as true, the moving party must still demonstrate a *prima facie* case of entitlement to judgment as a matter of law before the burden shifts to the non-movant to show genuine issues of material fact in dispute. *See Vermont Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004).   The same standard of review applies when the Court is dealing with cross-motions for summary judgment. Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is being considered.  *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121

6

(2d Cir. 2001). However, Fed. R. Civ. P. 56, does not place a duty upon the Court to independently traverse the record in a treasure hunt for disputed facts. *See, Amnesty America v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). As a consequence, the Court does not need to grant either party's motion. *Buote v. Verizon New England*, 249 F. Supp. 2d 422, 428 (D. Vt. 2003).

*B.  Findings of Fact Not in Material Dispute*

The Court has reviewed the Plaintiff's Motion and Debtor's Cross-Motion, the Rule 56(a) Statements, the Memoranda in Support and in Opposition, the Affidavits and Exhibits, including the excerpts from the Superior Court Action transcript, Judge Shortall's jury charge therein (hereinafter, the "Jury Charge"), and the completed Interrogatories and Verdict Form, (hereinafter, the "Verdict"), Adv. ECF No. 142-6, Plaintiff's Motion, Ex. 4, which formed the basis of the Verdict and the dockets, files and records of the captioned bankruptcy case and adversary proceeding. Based upon that review, the Court finds the following facts not to be in genuine issue and makes the following enumerated findings of fact for the purposes of the present Plaintiff's Motion and Debtor's Cross-Motion.

1.      On August 23, 2005, CMI commenced a lawsuit against the Defendant, John C. Dybowski (hereinafter, "Mr. Dybowski") and Xipher Technologies, LLC (hereinafter, "Xipher"), in the Connecticut Superior Court. CMI's Fifth Amended Complaint (hereinafter, the "Complaint") in the Superior Court Action alleged that:

a.      CMI designs and markets products used worldwide for applications such as time and attendance tracking, inventory control, work in process management, and access control.

7

b.      The Defendant was an employee of CMI for approximately twenty-four years. In July 1980, the Defendant began his employment at CMI as an electronic technician. The Defendant was promoted several times during his tenure at CMI.  In October, 1986, he became senior design engineer and was appointed the head of the engineering department. In 1999, the Defendant was promoted to vice president of product engineering and became responsible for CMI's product engineering department. The Defendant held the position of vice president of product engineering until he voluntarily terminated his employment effective September 3, 2004.

c.      As vice president of product engineering, the Defendant's responsibilities included identifying new technology required for CMI's customers, leading the product engineering department in the development of new products utilizing new technologies, and addressing customers' requirements. As vice president of product engineering, the Defendant controlled the direction of research and development for the product engineering department. In his role at CMI, he was responsible for reviewing and interpreting specifications, developing specifications from conceptual design discussions, and providing technology support for sales and marketing efforts.

d.      As vice president of product engineering, the Defendant had a duty to fulfill his job responsibilities to CMI by improving its existing products, developing new products, and fulfilling the current and projected needs of CMI's customers such as Data Management, Inc. (hereinafter, "DMI"). As an employee of CMI, the Defendant owed a fiduciary duty to CMI. As an employee and vice president of product engineering for CMI, the Defendant owed a duty to CMI to use his utmost good faith, loyalty, and honesty toward CMI.

8

e.      As part of his duties at CMI, the Defendant designed products for a significant CMI customer, DMI. DMI became a CMI customer in 1998. From approximately March, 2002 to January, 2004, the Defendant was the primary employee assigned by CMI to the DMI account. CMI assigned to the Defendant the responsibility to learn and fulfill the specific requirements of DMI. CMI designed several products for DMI while the Defendant held significant positions in the engineering department.

f.      In June, 2002, while the Defendant was vice president of product engineering, CMI, under the direction of the Defendant, designed a product sold exclusively to DMI which DMI marketed as the "Mark II." The Mark II was an interactive terminal. While the Defendant was vice president of product engineering, the Defendant was responsible for the complete design of a product which was released to production in or about May, 2004 and that was sold exclusively to DMI which DMI marketed as the "Mark III." While he was vice president of product engineering, the Defendant was responsible for the product engineering department developing a stand alone terminal (hereinafter, "SAT") at the request of DMI that would replace or augment the product marketed by DMI as Mark III. On or about December 16, 2003, the Defendant demonstrated a prototype SAT for DMI. CMI continued to develop and modify specifications for the SAT in 2004.

g.      The Defendant and Mr. Dybowski formed Xipher shortly after leaving CMI in August 2004.  Beginning in early 2005, Xipher supplied the products marketed by DMI as "Integrity" to DMI. Consequently, DMI reduced and then eliminated the number of products it purchased from CMI.

2.      CMI asserted a claim against the Defendant for breach of fiduciary duty in

Count I of the Complaint; for violation of CUTSA, Conn. Gen. Stat. §35-50 *et seq*., in Count III of the Complaint; for misappropriation of a corporate opportunity in Count VI of the Complaint; for tortious interference with business relations in Count IX; for violation of the Connecticut Unfair Trade Practices Act (hereinafter, "CUTPA"), Conn. Gen. Stat. §42-110a *et seq*., in Count XII; for imposition of a constructive trust in Count XV and for unjust enrichment in Count XVIII.

3.     The Plaintiff did not include any counts based upon a claim of false pretenses, false representation, defalcation or actual fraud.

4.     The Defendant met on more than one occasion with attorneys from Rome McGuigan, P.C., during July and August of 2004 to discuss employment-related issues, including the formation of his own business, Adv. ECF Nos. 142-13,142-14,142-15, 142-16, Plaintiff's Motion, Ex. 11, 12 and 13; *Defendant's Affidavit of Timothy Paul Morello ¶25,* Adv. ECF Nos.160 and 161-1.

5.     A fifteen day jury trial in the Superior Court Action took place from February 6, 2007 to March 6, 2007, with Judge Shortall presiding. Over the fifteen day trial, some 115 exhibits were admitted and ten witnesses testified. The testimony included testimony from experts regarding damages.

6.     On March 8, 2007, Judge Shortall gave his Jury Charge to the jury, Adv. ECF Nos. 142-3, 142-4, 142-5, Plaintiff's Motion, Ex. 3.  In the Jury Charge, the Judge instructed the jury, among other things:

     a.     On Count I of the Complaint [breach of fiduciary duty], that:

          i.     In order to find for CMI, the jury had to find that a fiduciary

10

relationship existed between the Defendant and CMI by a preponderance of the evidence, by considering whether the actions which CMI claims breached the duty, fell within the scope of his employment, Adv. ECF No. 142-3, Plaintiff's Motion, Ex. 3, p. 14;

   ii. CMI alleged the Defendant breached his fiduciary duty by developing or assisting in the development of a product to compete with CMI; developing a product marketed by DMI as Integrity for his own personal gain; utilizing the corporate assets of CMI to develop the product marketed by DMI as Integrity; soliciting CMI employees to leave CMI; soliciting CMI's customer, DMI; interfering with CMI's business relationship with a significant CMI customer, DMI; and utilizing CMI's suppliers to acquire components for the product marketed by DMI as Integrity, Adv. ECF No. 142-3, Plaintiff's Motion Ex. 3, pp.15-16;

   iii. The jury may consider that Mr. Morello, by virtue of his position as a vice-president of CMI, was an officer of the corporation and as such had a higher duty of loyalty to the corporation than a line employee but that the jury may also consider whether the nature of Mr. Morello's employment was such as to create a fiduciary in all matters affecting CMI.  Adv. ECF No. 142-3; Plaintiff's Motion Ex. 3, p. 16.

   iv. In order to find for CMI, the jury had to find that the Defendant had breached his duty of loyalty and trust,  Adv. ECF No. 142-3, Plaintiff's Motion, Ex. 3, p.14;

   v. In order to find for CMI, the jury had to find that CMI suffered actual harm and damages, Adv. ECF No. 142-3, Plaintiff's Motion, Ex. 3, p. 14.

  b. On Count III of the Complaint [violation of CUTSA], that

   i. In order to find for CMI, CMI had to prove by a preponderance

11

of the evidence that what it claimed was a trade secret was of the kind included in the trade secrets act; that the information had independent economic value to CMI from not being generally known to and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use; CMI made reasonable efforts under the circumstances to maintain the secrecy of the information, and Mr. Morello misappropriated this information as that term is defined in the trade secrets act, Adv. ECF No. 142-3, Plaintiff's Motion, Ex. 3, pp. 31-32;

ii.     CMI claimed trade secret protection for three types of information: the specifications for the Mark II and Mark III terminals which it sold to DMI; its cost data for those terminals; and its pricing data for those terminals, Adv. ECF No. 142-3, Plaintiff's Motion, Ex. 3, p. 32;

iii.     Assuming the jury found that all other tests were met by CMI, the jury would proceed to determine whether the Defendant misappropriated CMI's trade secrets, Adv. ECF No. 142-3, Plaintiff's Motion, Ex. 3, pp. 34-35.

c.     On Count VI of the Complaint [misappropriation of a corporate opportunity], that:

i.     CMI was required to prove that a fiduciary relationship between CMI and the Defendant existed and the existence of an opportunity on CMI's part to continue to do business with DMI, Adv. ECF No. 142-4, Plaintiff's Motion, Ex. 3, p. 41;

ii.     If an employee who has a fiduciary duty to the corporation is presented with a business opportunity that the corporation is financially able to undertake and is in line with its business and is one in which the corporation has an interest or expectancy, the law will not permit him to seize the opportunity for himself, Adv. ECF

12

142-4, Plaintiff's Motion, Ex. 3., p.41;

    iii. If the jury found that the corporate opportunity did exist, the burden shifted to the Defendant by clear and convincing evidence to prove that he dealt fairly with CMI and that he did not violate his fiduciary duty by taking advantage of CMI's corporate opportunity for himself,  Adv. ECF No. 142-4, Plaintiff's Motion, Ex. 3., p. 43.

    d. On Count IX of the Complaint [tortious interference with a business relationship], that:

    i. CMI was required to prove that it had a business relationship with DMI in the form of a contract or a business expectancy; the Defendant knew of the relationship; that he tortiously – that means wrongfully – interfered with it; and CMI suffered an actual loss as a result of that interference, Adv. ECF No. 142-4, Plaintiff's Motion, Ex. 3., p. 48;

    ii. CMI must prove all four of these elements to recover, Adv. ECF No. 142-4, Plaintiff's Motion Ex. 3., p. 48.

    e. On Count XII of the Complaint [violation of CUTPA], that:

    i. If the jury returned a verdict in favor of CMI on Counts I (breach of fiduciary duty), VI (misappropriation of corporate opportunity) or IX, (tortious interference with a business relationship) then to find that the Defendant committed an unfair trade practice, the jury must first find that his actions as described in the Counts in which a verdict was found in CMI's favor were carried out in the course of his trade or business, Adv. ECF No. 142-4, Plaintiff's Motion, Ex. 3., pp. 55-56;

    ii. CMI must then establish either that the Defendant's "conduct offended the public policy of the state of Connecticut as it has been established by statutes,

the common law or other established concepts of unfairness," or that his "conduct was immoral, unethical, oppressive or unscrupulous," and that CMI suffered an ascertainable loss, Adv. ECF No. 142-4, Plaintiff's Motion, Ex. 3., pp. 56-57;

7.    On March 9, 2007, the jury completed the Verdict, and found as follows:

a.    On Count I of the Complaint, that CMI proved that the Defendant owed CMI a fiduciary duty; that the Defendant did not prove he dealt fairly with CMI while he remained CMI's fiduciary; that CMI proved the Defendant's breach of his fiduciary duty caused CMI actual damages; returned a Verdict in favor of CMI; and awarded CMI damages in the amount of $2,813,000 for lost profits and $44,816 for unjust enrichment[3];

b.    On Count III, that the information for which CMI claimed trade secret protection was of the same kind as included in the list in CUTSA; that this information had independent economic value to CMI from not being generally known to, and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure and use; that CMI made reasonable efforts under the circumstances to maintain the secrecy of this information; that the Defendant misappropriated this information; returned a Verdict in favor of CMI; and awarded CMI damages in the amount of $2,813,000 for lost profits and $44,816 for unjust enrichment;

c.    On Count VI, that the Defendant owed CMI a fiduciary duty; that CMI proved the existence of an opportunity on its part to do business with DMI; that the Defendant did not prove that he dealt fairly with CMI and did not prove that he did not take

_____

[3] In his Jury Charge, Judge Shortall instructed the jury that while CMI cannot recover twice for the same damages, if the jury were to find for CMI, the jury was nevertheless free to include in Counts I, III, VI and IX, the same amount of damages entered in the other Count(s). Adv. ECF. Nos. 142-3, 142-4, Plaintiff's Motion, Ex. 3, pp. 20-22, 36, 44, 45.

advantage of CMI's corporate opportunity for himself; returned a Verdict in favor of CMI; and awarded CMI damages in the amount of $2,813,000 for lost profits and $44,816 for unjust enrichment;

       d.     On Count IX, that CMI had a business relationship with DMI in the form of a contract or a business expectancy; that the Defendant knew of that relationship but that the Defendant had not tortiously, *i.e.*, wrongfully interfered with that relationship;

       e.     On Count XII, that the Defendant's acts as described in the Complaint were carried out in the course of his trade or commerce; that his conduct constituted an unfair act or practice; that CMI suffered an ascertainable loss as a result of the Defendant's unfair act or practice; that CMI suffered actual damages in addition to the damages awarded on the other counts and awarded CMI nominal damages of $1,000.

       8.     On May 15, 2007, Judge Shortall entered his *Memorandum Of Decision On Defendants' Motion For Judgment Notwithstanding The Verdict Or To Set Aside The Verdict And For A New Trial Or For Remittitur* (hereinafter, the "Order Denying Motion To Set Aside"), Adv. ECF No. 142-7; Plaintiff's Motion, Ex. 5.

       9.     On August 20, 2007, the same day the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, the Debtor filed his bankruptcy schedules (hereinafter, the "Schedules"), ECF No. 1; Adv. ECF No. 142-8, Plaintiff's Motion, Ex. 6. The Debtor signed the Schedules under penalty of perjury. In Schedule B of the Schedules, the Debtor did not list a counterclaim against CMI or any other person, any right of setoff against the claim of CMI or any other person, or any claim for malpractice against the law firm of Rome McGuigan, LLC.

15

10.     On September 10, 2007, Judge Shortall issued a *Memorandum of Decision on Punitive Damages, Attorney's Fees and Equitable Relief* (hereinafter, the "Supplemental Judgment"), Adv. ECF No. 142-9, Plaintiff's Motion, Ex. 7.  In the Supplemental Judgment, the Judge entered judgment in accordance with the Verdict and ordered, in addition:

a.     That the Defendant (and Mr. Dybowski and Xipher) pay CMI's attorneys' fees through March 30, 2007 in the amount of $772,589.91.

b.     That the Defendant (and Mr. Dybowski and Xipher) hold in trust for CMI all profits realized through calendar year 2020 from the sale, maintenance, repair and service of any Integrity series terminal and that they convey all such profits to CMI within ten days of their receipt. Such constructive trust was to apply to any profits received in calendar years 2007 and 2008 which exceed $791,000 and $871,000 respectively and to all profits received in calendar years 2009 and 2010.

c.     That the Defendant (and Mr. Dybowski and Xipher) provide to CMI on a monthly basis all invoices issued to any company or individual and records of profits received for the sale, maintenance, repair and service of any Integrity series terminals.

11.     On September 19, 2007, CMI commenced this action by filing the Nondischargeability Complaint against the Debtor, seeking to have CMI's claim against the Debtor declared non-dischargeable under Bankruptcy Code §§523(a)(2)(A), (4) and (6).

12.     On February 1, 2008, CMI filed a proof of claim in the Debtor's bankruptcy case for $3,655,098.90, the sum of the amount awarded in the Verdict and the attorneys' fees that Judge Shortall awarded in the Supplemental Judgment, Adv. ECF No. 142-10, Plaintiff's Motion, Ex. 8.

13.     On April 5, 2011, the Debtor filed in his bankruptcy case, an *Objection to the*

16

*Claim Of Control Module, Inc. (Claim #1)* (hereinafter, the "Objection"), ECF No. 98, Adv.

ECF No. 142-11, Plaintiff's Motion, Ex. 9.  In paragraph 6 of the Objection, the Debtor states

that "the verdict is erroneous in that on June 16, 2007, Control Module, Inc. caused the

termination of Xipher Technologies, LLC's business and thus, deprived it of subsequent

revenue from Data Management, Inc." In paragraph 8 of the Objection, the Debtor states

that "by deliberately seizing all operating assets of Xipher Technologies, LLC on or about

June 16, 2007, Control Module, Inc. deliberately and maliciously destroyed the business of

Xipher Technologies, LLC and as a direct result, destroyed the ability of the Debtor . . . to

satisfy the obligation upon which this claim rests and further, destroyed the fair market value

of the Debtor's interest in the business that he had founded in 2004."

14.      On May 24, 2011, the Bankruptcy Court overruled the objection to claim filed

by Mr. Morello on the grounds of *res judicata* but reduced the claim amount by $1.2 million

dollars based on a recovery previously obtained by CMI from DMI, ECF No. 111.

Subsequently, a *Motion for Reconsideration of Order Overruling Objection to Claim of

Control Module, Inc.*, ECF No. 113, was filed, but at the request of the parties, the motion

for reconsideration has been deferred until the Court rules on the present summary

judgment motions.

## V.  DISCUSSION

*A.      The Preclusive Effect of the Superior Court Action on Plaintiff's Motion and Debtor's
Cross-Motion for Summary Judgment.*

*1.      General Standards for Collateral Estoppel*

"It is well settled that preclusion principles apply in bankruptcy proceedings." *Evans

v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006), *citing Grogan v. Garner*, 498 U. S. 279, 111 S.

17

Ct. 654 (1991).   "Where the debt in question is a judgment entered after a claim of fraud

has been adjudicated, either party to a subsequent adversary proceeding on

nondischargeability can invoke collateral estoppel to establish that the debt is or is not

dischargeable under the relevant nondischargeability provision." *Giaimo  v. DeTrano (In re*

*DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003).

Federal courts must use state court rules of preclusion where, as here, it concerns

a state court action.  *Marrese v. Amer. Academy of Orthopaedic Surgeons*, 470 U.S. 373,

105 S. Ct. 1327 (1985).  "When determining the preclusive effect of a state court judgment,

a court must apply the preclusive law of the rendering state." *Faraday v.  Blanchette*, 596

F. Supp. 2d 508 (D. Conn. 2009) *citing Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.

1996).  Under Connecticut law,

> [c]ollateral estoppel means simply that when an issue of ultimate fact has
> once been determined by a valid and final judgment, that issue cannot again
> be litigated between the same parties in any future lawsuit. . . . Issue
> preclusion arises when an issue is actually litigated and determined by a valid
> and final judgment, and that determination is essential to the judgment."
> (Citations omitted; internal quotation marks omitted.)

*Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 57-58, 808 A.2d 1107 (2002).

\*\*\*

> In other words, [the doctrine of] collateral estoppel precludes a party from
> relitigating issues and facts actually and necessarily determined in an earlier
> proceeding between the same parties or those in privity with them upon a
> different claim. . . . An issue is actually litigated if it is properly raised in the
> pleadings or otherwise, submitted for determination, and in fact determined.
> . . .  An issue is necessarily determined if, in the absence of a determination
> of the issue, the judgment could not have been validly rendered. . . .  If an
> issue has been determined, but the judgment is not dependent upon the
> determination of that issue, the parties may relitigate the issue in a
> subsequent action. Findings on nonessential issues usually have the
> characteristics of dicta. (Internal quotation marks omitted.)

*Id*. at 58 n.17;

*See also DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 846 A.2d 849 (2004).

    *2.  Whether the Superior Court Action Is Sufficiently "Final" for the Purposes of Collateral Estoppel.*

    At the outset, the Debtor has challenged the finality of the Verdict in the Superior Court Action, arguing that it is not sufficiently final for collateral estoppel purposes. However, in *Kolich v. Shugrue*, 198 Conn. 322 (1986), and in *Pietrorazio v. Santopietro*, 185 Conn. 510, 512 (1981), *rev'd on other grounds*, 239 Conn. 207 (1996), the Connecticut Supreme Court held that under Connecticut law, the acceptance of a jury verdict at the time it is rendered is deemed to constitute a final judgment and may be appealed, *citing Grzys v. Connecticut Co.*, 123 Conn. 605, 607n., 198 A. 259 (1938); *Hull v. Thoms*, 82 Conn. 386, 391, 73 A. 793 (1909), unless a motion to set aside is later filed. *Tough v. Ives*, 159 Conn. 605, 606, 268 A.2d 371 (1970). *See also Tucker v. American International Group, Inc.*, 745 F. Supp. 2d 53, 62 (D. Conn. 2010). If a motion to set aside the verdict is filed and denied, then the verdict at that point is final and may be appealed. *Grzys* at 605; Conn. Gen. Stat. §52-263.[4]   In this case, Judge Shortall accepted the jury's Verdict on March 9, 2007; the Defendant filed *a Motion For Judgment Notwithstanding The Verdict Or To Set Aside The Verdict And For A New Trial Or For Remittitur,* which was denied by Judge Shortall in a

---

   [4] Providing, "[u]pon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, . . . if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict . . . .

Order Denying Motion To Set Aside on May 15, 2007, and the Defendant took an appeal[5].

Further, "[w]hile there is a distinction between finality for purposes of appeal and for purposes of res judicata, the two often overlap. 1 Restatement (Second), [Judgments], §13. In limited circumstances, a decision may be appealable and yet not be final for purposes of res judicata,  Id., see *State v. Curcio*, 191 Conn. 27, 31 (1983) [as in certain stages of criminal proceedings]," *Marone v. City of  Waterbury*, 244 Conn. 1, 707 A2d 725 (1998). "For res judicata purposes, a judgment is "final' if no further judicial action by [the court rendering judgment is required to determine [the] matter litigated. Black's Law Dictionary (6th Ed. 1990)." *Id.*   In this case, a month-long jury trial was conducted with over fifteen days of evidence, the jury rendered its Verdict and the Judge accepted it.  "'[A] party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . .'" (Citations omitted.)  *Id*.

Finally, Connecticut courts have held that a trial court judgment is final, despite a pending appeal in so far as the applicability of *res judicata* and collateral estoppel is concerned.  *Preisner v. Aetna Casualty and Surety* Co., 203 Conn. 407, 414 (1987); ("Because collateral estoppel is a much narrower aspect of res judicata, and a pending appeal does not preclude the application of res judicata, we conclude that the plaintiff's pending appeal in the criminal action did not preclude the defensive application of collateral estoppel in the civil action."). *Carnemolla v. Walsh*, 75 Conn. App. 319, 327 (2003).

Therefore, in light of the above, the Court concludes that the Superior Court Action, (with a significant exception discussed *infra* on pages 34-36), is sufficiently final for the

---

[5]The Court takes judicial notice of the Superior Court Docket indicating that the Defendant filed an appeal to the Appellate Court on June 4, 2007, Doc. No. CV-05-4015083-S (X09), Entry No. 247.00.

Court to consider whether collateral estoppel will bar relitigation of the issues previously considered and determined. However, the party seeking to utilize the doctrine of collateral estoppel has the ultimate burden of proving the elements necessary for its application, *see, e.g, Automated Salvage Transport, Co., v. Swirsky* (*In re Swirsky*), 372 B.R. 551, 562 (Bankr. D. Conn. 2006).

B.    *The Preclusive Effect of the Superior Court Action on Plaintiff's Motion for Summary Judgment.*

1.    *As to Count II - Nondischargeability Under Section 523(a)(4).*

To determine whether the issues involved in this proceeding were directly addressed in the former adjudication, we must look to § 523(a)(4) of the Bankruptcy Code.  Bankruptcy Code §523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).[6] This exception, like most, must be narrowly construed. *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007) *citing Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974 (1998).  Thus, the Superior Court Action must be examined to determine if the factual and legal determinations actually and necessarily decided therein are identical to those required to make a finding for the Plaintiff under at least one of the grounds set forth in §524(a)(4).

a.    *Whether "Fiduciary Capacity" Was Actually and Necessarily Decided.*

The question of whether a debt may be held non-dischargeable as a debt "for fraud or defalcation while acting in a fiduciary capacity," is only reached "when the threshold

---

[6](a)    "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
. . .
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny . . . ."

21

determination that the debtor acted in a fiduciary capacity has been made." *The Andy Warhol Found. for Visual Arts, Inc., v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999).

> Although the precise scope of the defalcation exception is a question of federal law, its application frequently turns upon obligations attendant to relationships governed by state law. For example, state law can be an important factor in determining whether someone acted in a fiduciary capacity under Section 523(a)(4) . . . . On the other hand, there are federal limits on the ability of state law to expand the effects of this provision. *See, e.g., In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) ("If . . . a fiduciary is anyone whom a state calls a fiduciary . . . states will have it in their power to deny a fresh start to their debtors by declaring all contractual relations fiduciary."). As a general matter, therefore, federal law sets the outer boundaries of the defalcation exception, while state law may, through lesser or greater regulation of fiduciary obligations, affect the application of the provision.

*Id*. at 166-167. (Citations omitted).

It is accepted that a debtor acts in a fiduciary capacity under §523(a)(4) if he serves under a technical[7] or express trust[8]. *Artis v. West (In re West)*, 339 B.R. 557 (Bankr. E.D.N.Y. 2006). "Constructive or implied trusts or any trust where the existence of the trust is created merely on the basis of wrongful conduct (a trust ex maleficio) do not create a fiduciary relationship." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998).

However, in *Hayes*, 183 F.3d at 169, the Second Circuit rejected the view that for federal law purposes, a debtor acts in a fiduciary capacity *only* as a trustee of an "express" or "technical trust" and held that certain other classes of relationships not constituting actual

---

[7]Generally, a technical trust is said to arise as a result of defined obligations imposed upon the debtor by statute or common law. *Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir. 1976); *Nevels v.Caples (In the Matter of Caples)*, 454 B.R. 191 (Bankr. N.D. Ala. 2011).

[8]"An express trust is initiated by one entity's transfer of property to another entity coupled with a manifestation of an intention to create a trust." *First American Title Ins. Co. v. Eberhart (In re Eberhart)*, 283 B.R. 97 (Bankr. D. Conn. 2002), *affirmed*, 124 Fed. Appx. 672 (2d. Cir. 2005).

trusts but "in which special trust is bestowed upon a party," are also within the defalcation

exception.  The Plaintiff maintains that the jury found that the Defendant was a "fiduciary"

as an officer of the Plaintiff and therefore, the determination is entitled to collateral estoppel

in this proceeding.

> [N]umerous cases have applied the defalcation exception to debts
> owed by corporate officers, notwithstanding the absence of any express trust.
> *See*, *e.g., Pepper v. Litton*, 308 U.S. 295, 306, 84 L. Ed. 281, 60 S. Ct. 238
> (1939)  ("A director is a fiduciary. So is a dominant or controlling stockholder
> or group of stockholders. Their powers are in trust." (citations omitted)); *In re
> Hammond*, 98 F.2d 703, 705 (2d Cir. 1938) ("It can scarcely be doubted . . .
> that a director [is a fiduciary]."); *In re Bernard*, 87 F.2d 705, 707 (2d Cir. 1937)
> (holding that directors and officers are fiduciaries).

*Hayes*, 183 F.3d at 168.

In his Jury Charge, Judge Shortall defined a fiduciary relationship as it related to  the

Defendant as follows:

> To find a breach of fiduciary duty, you must find first that a fiduciary
> relationship existed between Mr. Morello, and CMI; second, that he breached
> that duty of loyalty and trust arising out of that relationship; and, three, that
> CMI suffered actual harm, actual damages.
>    What is a fiduciary relationship?  In general, a fiduciary relationship is
> one characterized by a high degree of trust and confidence between the
> parties, one of whom has superior knowledge, skill or expertise and is under
> a duty to represent the interests of the other.
>    The relationship of employer and employee gives rise to a fiduciary
> duty on the part of the employee.  Since there is no dispute that Mr. Morello,
> was an employee of CMI, he had a fiduciary duty to CMI.  But an employee
> does not have a fiduciary duty as to all the activities of his employer. He only
> has a fiduciary duty as to those activities that fall within the scope of his
> employment, unless the nature of his employment is such as to create a
> fiduciary relationship in all matters affecting the corporation, affecting the
> employer. . . . CMI has the burden of proving that a fiduciary relationship
> existed by a preponderance of the evidence.  *In order for you to determine
> whether Mr. Morello had a fiduciary duty to CMI as alleged in the complaint,
> you must determine whether the actions which CMI claims breached that duty
> fell within the scope of his employment as vice-president of product
> engineering. . . .*
>    You may also consider that Mr. Morello, by virtue of his position as a

23

vice-president of CMI, was an officer of the corporation. An officer or key executive of a corporation has a higher duty of loyalty to the corporation than a line employee. *You may also want to consider whether, from the evidence, the nature of Mr. Morello's employment was such as to create a fiduciary in all matter affecting CMI. . . .*

[I]f you find that there was a fiduciary relationship, you must determine whether Mr. Morello breached the fiduciary duty he had as part of that relationship.

Adv. ECF No. 142-3; Plaintiff's Motion, Ex. 3., pp. 14-16 (Emphasis added).

While Judge Shortall found that under Connecticut law, the Defendant's status as a employee *per se* gave rise to a fiduciary duty, he also clearly found that the Defendant was an officer of CMI[9] and as such, had a higher duty of loyalty than a line employee. The Judge's broad definition of "fiduciary", as given in the Jury Charge that a fiduciary duty arises out of "loyalty," "trust" and "confidence" between parties, is not by itself sufficient to create a fiduciary duty applicable in nondischargeability proceedings under §524(a)(4). *Reilly v. Miano (In re Miano)*, 265 B.R. 352, 355 (Bankr. D. Conn. 2001); ("[t]he term 'fiduciary capacity' is determined by federal law, and is 'narrowly construed'"], *A&J Produce Corp. v. Parra (In re Parra)*, 412 B.R. 99, 104 (Bankr. E.D.N.Y. 2009).

Nevertheless, in *Morande Ford, Inc. v. Kalogeros (In re Kalogeros)*, No. 05-2080, 2007 Bankr. LEXIS 2087, *7 (Bankr. D. Conn. June 20, 2007), the Bankruptcy Court examined how Connecticut law viewed the fiduciary responsibility of officers to the corporation and as a consequence, held that a vice-president and general manager of an automobile dealership breached his fiduciary duties in wholesaling cars at a discount to another company that employed him part-time to sell some of these same cars.

---

[9]Although the Debtor claims in his *Memorandum in Opposition . . . & Memorandum in Support . . .* p. 10 fn. 1, that he was not an officer of CMI, he concedes as such in his *Local Rule 56(a)2 Statement* and again, in his *Corrected Local Rule 56(a)2 Statement*, ¶1. b., c. and d.

In *May v. Lyon (In re Lyon)*, 348 B.R. 9 (Bankr. D. Conn. 2006), the Bankruptcy Court

looked more generally as to how state law views corporate officer/director relationships:

> Some state-law "fiduciary" relationships are so fraught with the elements of
> trust and confidence that they come within the ambit of the Section 523(a)(4)
> defalcation exception either as a matter of law or after only a minimal factual
> inquiry by the bankruptcy court. *See, e.g., Republic of Rwanda v. Uwimana
> (In re Uwimana)*, 274 F.3d 806, 811 (4th Cir. 2001) ("[A]mbassadors are, by
> definition, fiduciaries for the country they represent."); *Andy Warhol, supra*
> (attorney-client relationship); *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989
> F.2d 779, *opinion amended on rehearing by* 993 F.2d 1545, 1993 WL 268299
> (5th Cir. 1993) (managing general partner of limited partnership);
> *Master-Halco, Inc. v. Picard (In re Picard),* 339 B.R. 542 (Bankr. D. Conn.
> 2006) (corporate officer/director).

*Id* at 23-24.

The findings in the Verdict as to Counts I (Breach of Fiduciary Duty) and VI,

(Misappropriation of a Corporate Opportunity), that as a vice president of product

engineering, the Defendant had a fiduciary duty to CMI, and that the Debtor was acting as

a fiduciary to CMI at the time the debt was created, Adv. ECF No. 142-3 pp. 17-18,

Plaintiff's Motion, Ex. 3, are entitled to collateral effect in this nondischargeability

proceeding. That he is a fiduciary within the meaning of §523(a)(4) is further supported by

undisputed findings of fact, including the Debtor's admission in his 56(a)2 Statement ¶1.d.,

that "the Defendant owed a fiduciary duty to CMI,"[10] as well as the parties agreement as to

the broad scope of his job responsibilities. Therefore, the Bankruptcy Court may consider

whether the Verdict preclusively established that the Debtor committed fraud or defalcation

within the meaning of §523(a)(4).

---

[10]While the Debtor also states in the  Disputed Issues of Material Fact section of the 56(a)2
Statement that Debtor was not a fiduciary, such a statement cannot be considered sufficient to place the
issue in genuine dispute, in light of the findings of the jury which are entitled to collateral estoppel effect,
and other undisputed facts concerning the Debtor's role in the company indicating that he was clearly
acting in a "fiduciary capasity" for federal law purposes.

b.    *Whether the Elements of "Fraud" Were Actually and Necessarily Decided.*

The Plaintiff claims that the findings in the Verdict as to Counts III and VI, that the Defendant violated the Trade Secrets Act and misappropriated a corporate opportunity, established for collateral estoppel purposes that the Debtor committed fraud or defalcation while acting in a fiduciary capacity.   In making that determination, the Court must consider whether the issue of fraud under §523(a)(4) was actually placed in issue and actually determined in state court.   "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . " *Cumberland Farms, Inc. v. Groton*, 262 Conn. at 58 n.17.   If the Court answers yes to this question, the Court must then consider whether the elements of fraud under Connecticut law are identical to the elements of fraud under the Bankruptcy Code.  *See e.g.*, *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006). The elements of fraud under Connecticut law are "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *Miller v. Appleby*, 183 Conn. 51, 54-55, 438 A.2d 811 (1981).

At the outset, it must be noted that the Plaintiff's state court Complaint does not have a Count specifically alleging that the debtor committed "fraud." With regard to Count III, the jury found that the Defendant had violated CUTSA; that the information had value from not being disclosed to others and would have been valuable to others if disclosed; that the Plaintiff made reasonable efforts to maintain the secrecy of the information and that the Defendant misappropriated the information.  Adv. ECF No. 1-1, pp. 6-7.  As a consequence

26

of this Verdict, the jury awarded damages to the Plaintiff for lost profits and unjust enrichment. However, neither the Verdict nor the Jury Charge, as to Counts III or VI, use the words "fraud", deceit" "embezzlement", "willfully" or "intentionally."

And while Counts III and VI refer to the Defendant's "misappropriation", such term does not necessarily encompass a "fraudulent intent." In the Jury Charge, Judge Shortall defined "misappropriation" as follows: "Misappropriation is the use of a trade secret of another, without express or implied consent, by a person who, at the time of its use, knew or had reason to know that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to limit its use." Adv. ECF No. 142-3, Plaintiff's Motion Ex. 3., p. 35. That definition is insufficient to establish an "actual wrongful intent." "[A] bare finding of misappropriation of funds does not equate to a finding of fraud." *SSS Enterprises, Inc. v. Foral (In the Matter of Foral)*, Case No. 08-08051, 2009 Bankr. LEXIS 824, *10 (Bankr. D. Neb. April 1, 2009). Nor did an order of punitive damages enter on Counts III, VI or XII, which has occasionally been relied upon by courts to find the requisite "fraudulent intent." [11]

In Count XII, the jury found that the Defendant's acts as described in the Complaint

---

[11]The Plaintiff cites *Dent Wizard Int. Corp. v. Brown* (*In re Brown*), 237 B.R. 740 (Bankr. C.D. Cal. 1999) in support of its position that a state court's verdict for misappropriation of trade secrets warrants a court's giving collateral estoppel effect under §524(a)(4). However, in *Brown*, the jury expressly found that the debtor had acted with "evil motive" and awarded the plaintiff punitive damages.

On the other hand, the absence of an award of punitive damages does not necessarily establish that the Plaintiff cannot prove at trial that the Debtor's conduct warrants a denial of dischargeability under §§523(a)(2)(A), (4) or (6). Firstly, in *Gargano v. Heyman*, 203 Conn. 616, 622 (1987), the court held that an award of punitive damages was discretionary. Secondly, it held that "the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence," a standard that does not match those required under §§523(a)(2)(A), (4) or (6), *Cf. In re Hyman*, 502 F.3d at 68 (defalcation requires conscious misbehavior or extreme recklessness -- but not actual wrongful intent).

were carried out in the course of his trade or commerce and that his conduct constituted an

unfair act or practice.  However, the Verdict did not indicate whether the  "conduct offended

the public policy of the state of Connecticut as it has been established by statutes, the

common law or other established concepts of unfairness," or that "his conduct was immoral,

unethical, oppressive or unscrupulous," an alternative finding.  Adv. ECF No. 142-4,

Plaintiff's Motion, Ex. 3., pp. 56-57.  Again, neither the Verdict nor the Jury Charge, as to

Count XII, use the words "fraud", deceit" "embezzlement", "willfully" or "intentionally."

        "Fraudulent intent maybe determined from the facts and circumstances surrounding

the act." *Estate of Stanford Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 779 (Bankr. E.D.

Pa. 2004), *cert. denied*, 2005 WL 2396489 (E.D. Pa. 2005) (internal quotation marks

omitted).  Although the jury found that the Defendant violated CUTSA by misappropriating

information belonging to the Plaintiff and that his conduct constituted an unfair act or

practice, the jury did not make sufficient findings of the Defendant's state of mind to support

a conclusion by this Court as a matter of law that the Debtor's actions were done with the

actual intent to defraud the Plaintiff; *Rahman v. Seung Min Park (In re Seung Min Park)*,

No. 10-8040, 2011 Bankr. LEXIS 1339, *17 (Bankr. E.D.N.Y.  April 8, 2011) (findings as to

the debtor's state of mind are required for a showing of "fraud," "defalcation" and

"embezzlement" for purposes of a denial of discharge under 523(a)(4)).

        Further, when given the opportunity to find that the Defendant had "tortiously, i.e.,

wrongfully interfer[ed] with [CMI's] business relationship with DMI, the jury found that he had

not done so and returned a Verdict for the Defendant on Count IX.  The standard on a

motion for summary judgment is high and all reasonable inferences must be made in favor

of the non-moving party. Absent a specific and well-supported finding by the jury of actual

28

fraudulent intent, this Court can not use collateral estoppel on a motion for summary

judgment to find the fraudulent intent sufficient to establish fraud under Section 523(a)(4).

The Second Circuit Court of Appeals has often stated that "summary judgment is generally

inappropriate where questions of intent and state of mind are implicated." *Gelb v. Board*

*of Elections of City of New York*, 224 F.3d 149, 157 (2d Cir. 2000).

> c.    *Whether the Elements of "Defalcation" Were Actually and Necessarily*
*Decided.*

The jury's finding that the Debtor breached his fiduciary duty through

misappropriation does not necessarily meet the higher standards of "defalcation" under

§523(a)(4):

> "Defalcation" is not defined under the Bankruptcy Code. However, the
> standard for defalcation set forth by the Second Circuit Court of Appeals is
> high and "requires a showing of conscious misbehavior or extreme
> recklessness - a showing akin to the showing required for scienter in the
> securities law context." *Estate of Denton v. Hyman (In re Hyman)*, 502 F.3d
> 61, 68 (2d Cir. 2007)  (finding that this standard "complements but does not
> dilute the other terms of the provision, "fraud," "embezzlement" and "larceny"
> - all of which require a showing of actual wrong intent."); *see also Matrixx
> Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1312, 179 L. Ed. 2d 398 (2011)
> (scienter is "'a mental state embracing intent to deceive manipulate, or
> defraud.'"). The defalcation standard requires a "degree of fault 'closer to
> fraud, without the necessity of meeting a strict specific intent requirement.'"
> *Hyman*, 502 F.3d at 68 (adopting First Circuit standard set out in *In re Baylis*,
> 313 F.3d 9, 18-19).

*Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, No. 811-08163, 2011 Bankr. LEXIS

3112, *32-33 (Bankr. E.D.N.Y. August 16, 2011).

As in *Hyman*, in which the Second Circuit held that the surrogate's court had found

that the debtor had breached his fiduciary duty by misappropriating the creditor's assets for

his own benefit, but had not made findings as to the debtor's state of mind, the Verdict does

29

not include any express findings as to this Debtor's actual intent. Only in Count IX (Tortious Interference with a Business Relationship) does the issue of the Defendant's intent arise. In Judge Shortall's Jury Charge, he instructed that in order to return a verdict for the Plaintiff under this Count, the Plaintiff must prove that the Defendant interfered with the Plaintiff's relationship with DMI "intentionally" and "tortiously." The Judge further instructed the jury that to find that the Defendant acted tortiously, he must be found to have acted with malice and he defined malice as "the doing of a wrongful act without justification and with an intent to cause financial harm." Adv. ECF No. 142-4, Plaintiff's Motion, Ex. 3 pp.49-50.  However, in the Verdict, the jury expressly declined to find that Mr. Morello had "tortiously, i.e., wrongfully" interfered with CMI's business relationship with DMI.

In order to grant summary judgment to the Plaintiff in this action, the Court must find in the Verdict and in the balance of the record, evidence of a determination that the Debtor's behavior rose to the level of "conscious misbehavior or extreme recklessness." To the extent this Court has doubts as to the Debtor's state of mind in breaching his fiduciary duty, in misappropriating trade secrets and corporate opportunity, as found by the jury, these doubts must be resolved in favor of the Debtor as required by a motion for summary judgment.  Applying this standard, the Court cannot find that the record of the Superior Court Action clearly and specifically established this behavior.

> d.   *Whether the Elements of "Embezzlement" or Larceny" Were Actually and Necessarily Decided.*

Unlike the elements of 'fraud" and "defalcation" contained within the first part of §524(a)(4), there is no requirement in the balance of §524(a)(4) that the Plaintiff first establish that the Debtor was acting in a fiduciary capacity before it may establish that the

Debtor committed larceny or embezzlement.  "Larceny is the wrongful taking of another's property with the fraudulent intent to convert it without the owner's consent." *Kaye v. Rose (In the Matter of Rose)*, 934 F.2d 901, 903 (7th Cir. 1991).  With larceny, "there is a requirement that felonious intent exist at the time of the taking." *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 671 (Bankr. E.D. Va. 2001), (*citing Werner v. Hofmann  (In re Hofmann)*, 144 B.R. 459, 464 (Bankr. D. N.D. 1992), *aff'd*, 5 F.3d 1170 (8th Cir. 1993). "Embezzlement differs from larceny in that the original taking of the property was lawful or occurred with the owner's consent. *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 703 (Bankr. N.D. Ill. 2002);" *see also, Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R. 392  (Bankr. N.D. Ill. 2005).   Here, the parties agree that within the scope of his employment, the Debtor rightfully developed and gained knowledge of CMI's products and technology and his responsibilities included being the primary employee assigned to the DMI account. The dispute here concerns what, if anything wrongful was done by him with the knowledge he acquired from the Plaintiff and from the relationship he developed with DMI in the course of his employment.  Therefore, larceny is inapplicable in this case.

"Embezzlement under Section 523(a)(4) is to be determined under federal common law, which defines it as the fraudulent appropriation of money by a person to whom such property had been entrusted or into whose hands it has lawfully come." *Gore v. Kressner (In re Kressner)*, 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993).  More precisely, embezzlement consists of three elements: "(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent." *Northeast Remarketing*

31

*Services, Inc. v. Guthier (In re Guthier)*, No. 09-50008, 2010 Bankr. LEXIS 2128, at *16

(Bankr. N.D.N.Y. Apr. 9, 2010)*; Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 2011

Bankr. LEXIS 3112, at *36.

While as noted above, embezzlement does not require a fiduciary relationship, it

does require an intent to defraud, which is a higher standard than that required of

defalcation.   In *In re Hyman*, 502 F.3d at 68, the court held that defalcation "requires a

showing of conscious misbehavior or extreme recklessness" but does not have a strict

specific intent requirement, unlike "'fraud,' 'embezzlement' and 'larceny' --  all of which

require a showing of actual wrongful intent."  As the Court has found that the Verdict and

the balance of the record do not establish either fraudulent intent nor the lower standard

required of defalcation, the evidence is clearly insufficient to establish that the Debtor's debt

is nondischargeable under §523(a)(4) on grounds of embezzlement.

2.    *As to Debtor's First Special Defense*.

The Debtor has raised as a Special Defense to the Plaintiff's Nondischargeability

Complaint that the Debtor lacked the necessary fraudulent intent to support a

nondischargeability determination as to his debt to the Plaintiff because his actions vis-a -

vie, DMI, were taken in reliance upon legal advice given to him concerning how to properly

establish a new business in accordance with Connecticut law.

The Plaintiff has moved that it be granted summary judgment as to that Special

Defense. The Debtor has cited *On Bank & Trust Co. v. Siddell (In re Siddell)*, 191 B.R. 544,

554 (Bankr. N.D.N.Y. 1996), in support of his position that relying upon the advice of

counsel negates any inference of fraudulent intent.  The *Siddell* court noted however, that

there is a split of authority as to whether and when advice of counsel is a proper defense

32

to rebut fraudulent intent. Compare, *Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730 (Bankr. S.D. OH 1999) (while actual intent to hinder or delay a creditor can be negated by reliance on the advice of counsel, reliance must be in good faith), with *Holland v. Sausser (In re Sausser)*, 159 B.R. 352, 356 (Bankr. M.D. Fla. 1993) (advice of counsel is not an adequate defense), although the majority of cases consider reliance on such advice a valid defense when a full and fair disclosure of the facts had been made. *See, Colish v. United States (In re Colish)*, 289 B.R. 523, 542 (Bankr. E.D.N.Y. 2002) and cases cited therein. In any case, there are no undisputed facts in the record for summary judgment purposes to find that the Debtor received the specific advice he says he relied upon and which relate directly to the issues presently before the Court. Deposition testimony by attorneys Lewis B. Rome and Andrew Houlding of Rome McGuigan, P.C., Adv. ECF Nos. 142-15 and 142-16, Plaintiff's Motion, Ex. 12-13, only reflect agreement that meetings did take place and that they concerned his employment at Control Module and his plans to establish a new business. There does not appear to be any agreement, whether because of memory lapses or for other reasons, as to the specific nature of the conversations and what, if any advice, was given to the Debtor at those meetings.

Nevertheless, at trial the Debtor will be free to submit to the Court additional evidence to the extent admissible, of his reliance on advice given to Mr. Morello by Rome McGuigan, P.C., which he believes demonstrates his state of mind at the time he and Mr. Dybowski started their new business and the Court will give such evidence the weight to which it is entitled. [12]

_____

[12]The Plaintiff asserts that the Debtor should be barred from raising this as a special defense since he failed to raise it in the Superior Court Action and therefore is collaterally estopped from raising it now. However, the issue of fraud or defalcation was not specifically raised in the Superior Court Action

3.    *As to Debtor's Second Special Defense*.

The Debtor has raised as a Second Special Defense to the Nondischargeability Complaint the argument that the language in the Supplemental Judgment, including the statement that "the evidence does not support a finding that the Defendants had the "wilful and malicious" state of mind necessary for such an award [referring to punitive damages under the CUTSA], compels the Bankruptcy Court as a matter of law to find in favor of the Debtor on all Counts.  The Plaintiff has moved that it be granted summary judgment as to that Special Defense.

However, because the Supplemental Judgment was issued after the filing of the Debtor's bankruptcy, the judgment of the court is void and neither side may claim that the court's finding are entitled to collateral estoppel for the purposes of the Plaintiff's Motion or the Debtor's Cross-Motion (*see infra* pp. 36-41).

> In the Second Circuit, as a general rule, any action taken in violation of the automatic stay is void *ab initio* and thus without effect. *Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (automatic stay is effective immediately upon filing of bankruptcy petition, and any subsequent proceedings against debtor or debtor entities are void); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (automatic stay is effective upon the filing of the petition and any proceedings described in section 362(a)(1) are void and without vitality if they occur thereafter); *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992) ("stay imposed by § 362(a) is automatically applicable to all entities without any need for intervention of any court or ruling"); *In re Govola*, 306 B.R. 733, 736 (Bankr. D. Conn. 2004) ("[i]n the Second Circuit, court and other actions which violate the automatic stay are void and without effect"); *In re Marine Pollution Service, Inc.*, 99 B.R. 210, 217 (Bankr. S.D.N.Y. 1989) (action in violation of automatic stay is void even when there is no actual notice of

---

and as stated above, a defense of advice of counsel has been held by some courts to prevent a finding of fraudulent intent under appropriate circumstances.

existence of stay).[13]

*In re Heating Oil Partners*, No. 08-31976, 2009 U.S. Dist. LEXIS 117871, *28-29 (D. Conn.

December 17, 2009).

In the Supplemental Judgment, Judge Shortall was called upon to consider whether

to award the Plaintiff punitive damages and attorneys' under CUTSA.  Under Conn. Gen.

Stat. §35-52 of CUTSA, once a violation is found, in addition to damages for actual loss

and/or unjust enrichment provided for under subsection (a), "if the court finds wilful and

malicious misappropriation, the court may award punitive damages in an amount not

exceeding twice any award made under subsection (a), and may award reasonable

attorney's fees to the prevailing party."  Judge Shortell held that:

> [T]he plaintiff is not entitled to an award of punitive damages under CUTSA.
> The evidence does not support a finding that the defendants had the "wilful
> and malicious" state of mind necessary for such an award. . . . There was
> neither the specific intent to harm the plaintiff nor the personal animosity on
> the part of the defendants toward plaintiff, its owner or any of its officers or
> employees which are required to support a finding of such a state of mind.
> . . . The defendants' obvious intent to benefit themselves does not equate with
> an intent to harm the plaintiff.

Memorandum of Decision on Punitive Damages, Attorney's Fees and Equitable Relief Adv.

ECF 142-9, Plaintiff's Motion Ex. 7, p. 2.

Similarly, Judge Shortall noted that even if the Plaintiff had properly requested

punitive damages under CUTPA, he would still have refused to make an award because the

evidence in the case does not demonstrate "'reckless indifference to the rights of others or

an intentional or wanton violation of those rights . . . . [T]he flavor of the basic requirement

---

[13]In this case, Judge Shortall was well aware of the bankruptcy, acknowledging it as such in his
decision: "The plaintiff's relentless pursuit of its post-verdict prejudgment remedies has led to the financial
ruin of the Defendants. All are now in bankruptcy." Adv. ECF No. 142-9, Plaintiff's Motion Ex. 7 pp. 14-15.

to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence.'" *Id.*

Judge Shortall's finding that the Debtor lacked the specific intent to harm the Plaintiff, held no personal animosity towards the Plaintiff and lacked a reckless indifference to the rights of others, does not bar the Plaintiff from establishing at trial that the Debtor's conduct met the different standards required to establish nondischargeability under Code §§523(a)(2) (4) or (6), particularly since Judge Shortell's determination is void as a matter of law.  On the other hand, while not bound by the Supplemental Judgment, the Bankruptcy Court may wish to review the Judge's decision for its analysis of the issues in making his findings as to the Debtor's state of mind and intent, particularly since both the Plaintiff and Debtor have made frequent reference in their pleadings and briefs to its findings to support their respective views of the nondischargeability issues being considered by this Court*. See, e.g., In re Dabrowski,* 257 B.R. 394*,* 409 (Bankr. S.D.N.Y. 2001) ("While not bound by the Housing Court's decision, this Court needless to say, thought it fully appropriate, and indeed essential, to review the Housing Court's decision for its analysis of the issues.").

C*.*     *The Preclusive Effect of the Superior Court Action on the Debtor's Cross-Motion for Summary Judgment.*

Neither the Verdict nor the related proceedings clearly establish those elements necessary for the Court to consider granting summary judgment to the Debtor. As stated previously, while collateral estoppel may bar relitigation of the issues previously considered and determined in the jury's Verdict, the party seeking to utilize the doctrine of collateral estoppel has the ultimate burden of proving the elements necessary for its application, *see, e.g, In re Swirsky*, 372 B.R. at 562.

36

In the Debtor's Cross-Motion, Adv. ECF No. 161, he alleges that none of the materials produced by the Plaintiff in support of the Plaintiff's Motion, including the Verdict, support Plaintiff's claims under Bankruptcy Code §523(a)(2)(A) (Count I), §523(a)(4) (Count II) or §523(a)(6) (Count III) of the Nondischargeability Complaint. Since the Plaintiff did not move for summary judgment as to Counts I and III, it would not have submitted such materials. Therefore, the Debtor's argument in this regard is inadequate to support his Cross-Motion as to Counts I and III unless he has submitted citations to the record establishing that there are undisputable material facts warranting the granting of his Cross-Motion.

Rule 56(a) of the Local Civil Rules of the United States District Court for the District of Connecticut (hereinafter, "D. Conn. L. Civ. R. __") supplements Fed. R. Civ. P. 56(c) by requiring, *inter alia*, statements of material fact from each party to a summary judgment motion. The underlying purpose of D. Conn. L. Civ. R. 56(a) is to assist the Court in the efficient determination of motions for summary judgment and thereby conserve limited and valuable judicial resources. ("The purpose . . . is to aid the court, by directing it to the material facts that the movant claims are undisputed and that the party opposing the motion claims are disputed."). *Coger v. Connecticut*, 309 F. Supp. 2d 274, 277 (D. Conn. 2004).

As the moving party, the Debtor is required by D. Conn. L. Civ. R. 56(a)1 to submit a statement of each material fact as to which he contends there is no genuine issue to be tried. While he has submitted a 56(a)1 Statement, it fails to comply with D. Conn. L. Civ. R. 56(a) in certain material respects. In particular, while it contains numerous assertions of fact, it is unaccompanied by citations to affidavits and/or evidence admissible at trial. D. Conn. L. Civ. R. 56(a)3, provides in relevant part, "Each statement of material fact by a movant in a Local Rule 56(a)1 Statement . . . must be followed by a specific citation to (1) the affidavit

of a witness competent to testify as to the facts at trial and/or evidence that would be admissible at trial. . . ." "Local Rule 56(a) requires a court to consider only those statements of fact that are supported by the evidence." *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 231 (D. Conn. 2008).  By failing to comply, the Debtor has deprived the Court of its intended benefit and compounded the Court's burden in fairly and efficiently determining the present motions.[14]

One of the statements that Debtor claims to be an undisputed material fact is contained in paragraph 5 of his 56(a)1 Statement, "At no time prior to the commencement of the State Court action, did Morello obtain any property of CMI by false pretenses, nor did he make any false representations to CMI nor did he engage in any act of fraud relating to CMI."  The suggestion by the Debtor that this conclusory assertion represents an undisputed material fact reflects a misunderstanding of the limited nature of summary judgment. The Plaintiff's Motion was based on the expectation by the Plaintiff that the findings in the Superior Court Action could be given collateral estoppel effect. Where they cannot (and the Debtor's principal argument in response to the Plaintiff's Motion is that they cannot, although the Debtor also sought to rely on parts of the jury's Verdict and Judge Shortall's orders in support of his Cross-Motion), the consequence is not to give judgment to the Debtor, but in the absence of undisputed facts to support the Debtor's position, to try the matter before the

---

[14]While the Debtor did submit an *Affidavit* in conjunction with the Debtor's filing of his Cross-Motion, Adv. ECF Nos. 160 and 161-1, the *Affidavit* is not specifically cited in the 56(a)1 Statement. Further, the Affidavit does nothing to establish any material, undisputed facts that would support the granting of summary judgment for the Debtor.  Most of the statements in the Affidavit are focused on matters not relevant to the consideration presently before the Court, *i.e.*, whether Judge Shortall correctly measured the amount of damages; whether the jury was correct in its findings; descriptions of the Plaintiff's seizure of the Debtor's company's assets; and matters concerning an unsuccessful settlement offer made to the Plaintiff following entry of the jury verdict and the seizure.

Bankruptcy Court.

Two other material facts which the Debtor claims are undisputed, namely, in paragraph 6 of his 56(a)1 Statement that "[a]t no time prior to his resignation from CMI effective September 3, 2004 was Morello a fiduciary of CMI, and in paragraph 7, that "[a]lternatively, if Morello was a fiduciary of CMI for any purposes, that relationship terminated effective with the termination of his employment," conflict directly with his admission in his 56(a)2 Statement ¶1.d., filed in response to the Plaintiff's Motion for Summary Judgment, that "the Defendant owed a fiduciary duty to CMI," and with his "Disputed Issues of Material Fact," section.   In paragraphs (a), (b), (c), and (d), (which represent all of his Disputed Issues), he claims as disputed the validity of the jury's determination that he was a "fiduciary" and whether any of the Verdict's findings were entitled to collateral estoppel effect in the Plaintiff's nondischargeability proceeding.  Further, in *Defendant's Sur-Reply Regarding Plaintiff's Motion for Summary Judgment,* Adv. ECF No. 178, p. 6, the Debtor states," There is a genuine issue of material fact as to whether the Defendant was a fiduciary of the Plaintiff for nondischargeability purposes."  The Debtor's other alleged undisputed material facts contained in paragraphs 8 and 9 in his 56(a)(1) Statement, rely on the same findings contained in the Supplemental Judgment and the Verdict, which in *Defendant's Sur-Reply . . .* at pp.1-2, he states are not entitled to collateral estoppel effect "as the issues relative to a nondischargeability proceeding were not fully and fairly litigated in the State Court."

There is one issue of material fact cited by the Debtor, to which there is no dispute. It is contained in paragraph 4 of his 56(a)(1) Statement which states, "In the aforesaid [Superior Court] action, CMI did not include any Counts based on a claim of false pretenses,

false representation or actual fraud against Morello." That issue, however, points to the reason why the Debtor's Cross-Motion cannot be granted – there was no requirement in the Superior Court Action that the Plaintiff establish the elements it needs to establish here in the nondischargeability proceeding and therefore, cannot be denied an opportunity to prove those required elements through the introduction of evidence and the testimony of witnesses in the Bankruptcy Court.

As stated earlier, where the parties are seeking summary judgment, the judge's function is not to weigh the conflicting evidence and determine the truth of the matter but to determine whether there are genuine issues for trial. The Plaintiff has set forth specific facts in his 56(a)2 Statement showing a number of genuinely disputed factual issues that are material under the applicable legal principles. Fed. R. Civ. P. 56(e). Hopefully, as this Court expects, there will be certain facts arising from this Court's Findings of Fact Not In Material Dispute and from those to be agreed upon by the parties, that will not require every part of the Superior Court Action to be retried.

Finally, although not one of the grounds upon which the Debtor has based his Cross-Motion, the Debtor argues in his *Memorandum in Opposition . . . & Memorandum in Support . . .*, that this Court should reduce the amount of the Plaintiff's allowed claim because in obtaining an order from Judge Shortall permitting the Plaintiff to obtain a post-Verdict, prejudgment remedy, and then attaching and seizing all of the Debtor's company's assets, it denied the Debtor the opportunity to pay the damages awarded by the jury out of future company profits. However, the *Complaint to Determine Dischargeability of Debt*, does not include in its prayer for relief a request that this Court determine the allowed amount of the Plaintiff's claim.

40

Further, as stated *supra*, on May 24, 2011, the Bankruptcy Court overruled the objection to claim filed by Mr. Morello which included this same assertion, on the grounds of *res judicata* but reduced the claim amount by $1.2 million dollars based on a recovery previously obtained by CMI from Data Management, Inc. ECF No. 111.  Subsequently, a *Motion for Reconsideration of Order Overruling Objection to Claim of Control Module, Inc.*, ECF No. 113, was filed, but at the request of the parties, the motion for reconsideration has been deferred until the Court rules on the present summary judgment motions. Whether it will, in fact, need to be determined, may turn on which party ultimately succeeds in this litigation.

## VI. CONCLUSION

For all of the foregoing reasons, the Court concludes that the Plaintiff's Motion for Summary Judgment, Adv. ECF No. 141 and the Debtor's Cross-Motion for Summary Judgment, Adv. ECF No. 161 shall be **DENIED**.  An Order to that effect shall enter simultaneously herewith.

Dated: May 29, 2012                                    BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge